IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAMUEL SMALLS, #501-033 | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: BAH-23-723 |
| WILLIAM BAILEY, WARDEN, *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY IN SUPPORT OF MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (ECF 21, 34) AND IN RESPONSE
TO PLAINTIFF'S SUPPLEMENTAL OPPOSITION THERETO (ECF 42)**

Defendants reply to Plaintiff's supplemental opposition (ECF 42) to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (MTDSJ) (ECF 21, 34).

**I.   Procedural Background**

Defendants filed their MTDSJ with two exhibits partially under seal. ECF 21, 22. Plaintiff opposed the MTDSJ. ECF 29. Defendants filed a Reply. ECF 34. Plaintiff filed an impermissible surreply, ECF 35, to which Defendants filed a Motion to Strike, or, in the Alternative, Response, ECF 36.

On February 13, 2024, this Court *sua sponte* ordered that Defendants had to either place the sealed documents (which had been attached to unsealed declarations describing the content, ECF 22) in the record or withdraw them. ECF 37. In considering Defendant's next-day response thereto, ECF 38, the Court ordered Defendants to provide Plaintiff with redacted versions of the previously sealed documents (PSDs), and that Plaintiff had 21 days after receiving the PSDs to supplement to his initial opposition to Defendants' MTDSJ. ECF 39. The Court ordered that Plaintiff was to address only the new material presented in the PSDs, nothing more. ECF 39 p. 2 ¶ 4 (also at p. 1).

On February 21, 2024, Defendants sent the PSDs to Plaintiff. ECF 41.

On March 4, 2024, Plaintiff filed his supplement, which in large part addressed materials that were

1

in the record before the PSDs were sent to him, thus going beyond this Court's order. For that and other reasons addressed herein, Plaintiff's supplement is unavailing, and that the Court should dispose of this case in Defendants' favor.

## II.     **The Court Should Dispose of this Case in Defendants' Favor**

In replying to Plaintiff's supplement, Defendants incorporate all of their prior facts and arguments, including from ECF 21, 32, 36. First and foremost, nothing Plaintiff says in his supplemental opposition avoids dismissal for failure to exhaust his available administrative remedies or otherwise undermines any of Defendants' arguments, and the Court should dispose of this lawsuit in Defendants' favor.

Plaintiff's strategy appears to be to mischaracterize roles in recommendations and decisions, to falsely allege despite ample pre-PSD evidence that Roslak and Kestler unilaterally issued the decision(s) for his housing status, and to leverage his case with false and inflammatory allegations that some Defendants committed perjury.

- *Plaintiff errs in his extortive averment that Case Manager McCabe committed perjury*

To avoid the important evidence Case Manager McCabe presented, Plaintiff says the Court should strike her Declaration because she allegedly committed perjury. ECF 42 pp. 7-8, 10-13. He says she did so when she attested she was his case manager from September 8, 2022, to June 21, 2023. ECF 42 pp. 11-13. As purported support, he asserts that the fact that someone named Culver signed a case management document about him in October 2022 meant that McCabe was not his case manager at that time. ECF 42 pp. 12-13, ECF 42-1. Plaintiff is mistaken both as to the significance of the Culver-signed document and as to the extreme and improper accusation that McCabe committed perjury when she said she was his case manager in the September 8, 2022 – June 21, 2023, time frame.[1] First, McCabe did not anywhere say that she was his *only* case manager. ECF 21-7. Second, McCabe *was* his case manager during that time, and, concurrently for part of that time, so was Case Manager Culver, and they shared

---

[1] Plaintiff's use of perjury accusations to leverage his case are misplaced and improper in all instances.

duties as part of Plaintiff's case management team. **McCabe Supp. Ex. 1** ¶¶ 2-6; **Gragg Ex. 2**; see ECF 41-1 p. 16 (listing both McCabe and Culver as case managers on his team).

Plaintiff also says McCabe committed perjury when she said she was not involved in the September 8 recommendation to assign him to AdSeg pending transfer or the earlier decision about the post-IHO hearing housing in HU4, because, he says, her name was on the August 31, 2023, meeting notes as an attendee, ECF 42 p. 11. Plaintiff erroneously concluded that McCabe's presence during that meeting meant she made the decisions about his housing and status before she and her team received the September 8, 2022, recommendation to assign him to AdSeg pending transfer. ECF 42 p. 11.

McCabe attended the August 31, 2022, meeting; however, as evident from the August 31, 2022, meeting minutes, her role was limited to reporting about and addressing issues related only to those incarcerated individuals who were in Housing Unit 5 and only after the HU4 issues were done. ECF 41-1 pp. 7-9 (Def -DeVaughn-005-007); see also **McCabe Supp. Ex. 1** ¶ 7. On August 31, 2022, McCabe was not there to – and did not -- discuss or make decisions about incarcerated individuals who were then in Housing Unit 4, including Plaintiff. *Id.* She had no input in Captain Roslak's August 31, 2022, recommendation about Plaintiff, who was housed in HU4 at that time, as that matter was not, so to speak, within her jurisdiction. *Id.*

- *Plaintiff errs in his extortive averment that Warden Bailey committed perjury.*

Plaintiff asks the Court to strike Warden Bailey's testimony, too, on erroneous and inflammatory claims that Warden Bailey committed perjury. ECF 42 pp. 7-10. First, Plaintiff claims that Warden Bailey committed "perjury" because he identified only the 5 persons from the *AdSeg review team's* recommendation as those who presented to him the recommendation to place Plaintiff on AdSeg pending transfer status and did not name all individuals who were present at the August 31, 2022, meeting. ECF pp. 8-10. Clearly, Plaintiff is mistaken. First, there was no decision or recommendation in the August 31, 2022, meeting to assign Plaintiff to AdSeg pending transfer. See, *e.g.*, ECF 41-1 pp. 7-9; ECF 21-5

3

¶¶ 7-8; ECF 21-7 ¶ 8. Second, Warden Bailey made the decision based on the *AdSeg review team's* recommendation; therefore, there was no reason to name anyone other than those 5 persons on the AdSeg review team. ECF 41-1 pp. 16-17; ECF 21-7 ¶ 11; see also **McCabe Supp. Ex. 1** ¶ 8; ECF 21-9 ¶ 4.

Second, Plaintiff bases his extortive averment that Warden Bailey committed perjury on DeVaughn's Declaration, ECF 21-5. ECF 42 p. 9. Plaintiff says DeVaughn's omission from the name Bailey from his statement that, that in talking with Roslak and Kestler, it was agreed to recommend assigning Plaintiff to AdSeg pending transfer, means Bailey was not involved in the decision, and, therefore, that Bailey must be lying when he testified that he approved the recommendation to assign Plaintiff to AdSeg pending transfer. *Id*. However, as was evident at the MTDSJ stage (*i.e.*, not new material in the PSDs), DeVaughn was merely talking about the process of making the *September 8, 2022, recommendation*, which went to the AdSeg review team, *not* to Warden Bailey directly, as it was for the AdSeg review team to make the recommendation to Warden Bailey. ECF 21-5 ¶ 10. ECF 21-7 ¶ 11; see also **Ex. 1** ¶ 8. So, of course, DeVaughn did not mention Warden Bailey as being involved in the early September recommendation stage because, simply, Warden Bailey was not then involved; thus the "omission" does not implicate perjury on anyone's part.

Third, Plaintiff claims that "Warden Bailey is not once mention [sic] by any of the defendants in their declaration as being apart [sic] of the recommendation and assignment to AdSeg process" and that this means Warden Bailey perjured himself by stating he approved a recommendation for AdSeg pending transfer. ECF 42 p. 9. Plaintiff errs here in at least two ways: (1) Plaintiff ignores that McCabe testified in her first Declaration at the MTDSJ stage that the AdSeg review team forwarded the team's recommendation to place Plaintiff on AdSeg pending transfer *to Warden Bailey*, ECF 21-7 ¶ 11; (2) Plaintiff ignores the PSDs, which show Warden Bailey approved the decision. ECF 41-1 pp. 16-17. These corroborate Warden Bailey's Declaration, which further states, "having no reason for disapproval

4

of these professionals' considered recommendation, I approved the recommendation to place inmate Small on Administrative Segregation pending transfer." ECF 21-9 ¶ 4.

- *Plaintiff persists in his erroneous misconstruction, claiming Roslak and/or Kestler were sole decision-makers.*

Plaintiff errs in continuing to claim that Roslak and/or Kesler made the decision (1) to keep him on HU4 for a few days after the Inmate Hearing Office uploaded its finding[2] or (2) to assign Plaintiff to AdSeg pending transfer, ECF 42 pp. 8-9.

First, neither Roslak nor Kestler unilaterally made any decision about Plaintiff's post-IHO hearing status, as these were made by committee or review team. As for keeping Plaintiff on HU4 post-IHO hearing until either general population beds were available or Plaintiff was assigned to AdSeg pending transfer, that decision was made by committee. ECF 21-5 ¶ 8; ECF 41-1 p. 8 (the very terms "It was agreed" demonstrates this was *not* a unilateral decision but was an *agreement* and merely to make a recommendation). The AdSeg pending transfer decision also was through a committee consideration and recommendation process (and with Plaintiff's agreement, ECF 21-6 ¶ 14). ECF 21-7 ¶ 10; ECF 41-1 pp. 16-17.

Second, Plaintiff misconstrues Mr. DeVaughn's statement that "per Captain Roslak, inmate Small should be placed on the transfer list," twisting it to mean that Captain Roslak was the sole decision maker, which Plaintiff knew was untrue from evidence before he received the PSDs as the language derives from DeVaughn's unsealed declaration from the MTDSJ stage. ECF 21-5. DeVaughn merely stated that it was not until Sept. 7, 2022, that Roslak noted Plaintiff *should be* placed on the transfer list. ECF 21-5 ¶ 7. It is evident from the use of the term "should be" that Roslak's statement was a mere recommendation, not an enforceable directive or final decision by any means. That Roslak (or Kestler)

---

[2] Plaintiff states that the IHO found him "not guilty." ECF 42 p. 6. However, as was in the record at the MTDSJ stage, the IHO decision was *not* an affirmative finding of "not guilty" nor was it a dismissal; rather, it was a notation that there was a plea agreement, and that the incident would remain on file as an affirmative "Incident Report." ECF 21-4 p. 7.

5

did not unilaterally assign Plaintiff to AdSeg pending transfer status (or, for that matter to HU4 between the IHO decision and the next assignment) is further evidenced by McCabe's initial Declaration, ECF 21-7, noting the first potential for the AdSeg pending transfer assignment was the September 8, 2022, *recommendation*, not a final decision, sent to the AdSeg review team. ECF 21-7 ¶¶ 8, 10-11. The AdSeg review team, after considering the matter, further *recommended* it to the Warden who would make a decision, and here the Warden approved the recommendation. ECF 21-7 ¶¶ 10-11; ECF 41-1 p. 16. Indeed, Warden Bailey's declaration, which was in the record long before Plaintiff received the PSDs, confirmed the assignment to AdSeg pending transfer resulted from a review team *recommendation* sent to him for approval, and not an earlier unilateral decision by Roslak, Kestler, or any other individual. ECF 21-9 ¶ 4.

- *Plaintiff cannot sustain a claim that the AdSeg pending transfer assignment was retaliatory*

Plaintiff, for the first time in this lawsuit, claims Roslak's recommendations, or participation in recommendations, was retaliatory.[3] ECF 42 pp. 2-4. However, such a claim is not appropriate under this Court's Order limiting the scope of Plaintiff's surreply because the information about Roslak's statements was already in the record with the first MTDSJ. See ECF 21-1 pp. 4-5; ECF 21-5 ¶¶ 5, 8. Plaintiff chose not to respond to that information in his first opposition to the MTDSJ or his impermissible surreply. ECF 29, 35. Furthermore, as Plaintiff was on notice through Defendants' Reply, ECF 34 pp. 10-14, esp. at p. 10, he cannot raise a new claim in an oppositional brief.[4]

---

[3] He also says it was "arbitrary and capricious," but clearly neither the recommendation nor the consideration process was anything but that.

[4] To the extent Plaintiff attempts to assert alleged retaliation as a new claim, it is not properly before the Court. Even the liberal pleading standard "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D.Md. 2006); see also, *Mylan Laboratories, Inc. v. Akzo, N. V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *see also Zachair Ltd. v. Driggs,* 965 F.Supp. 741, 748 n. 4 (D. Md. 1997) (a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998); *Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017) (it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

6

However, even if he had included a retaliation claim in the original complaint or tried to add it by amendment, such a claim is futile. In the prison context, courts treat claims of retaliation with skepticism. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). "[N]or is every restriction actionable, even if retaliatory." *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995). To sustain a claim, the prisoner must allege specific facts that support that the conduct is retaliation rather than a legitimate act of prison management. *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989); *Ashann-Ra v. Com. of Va.*, 112 F. Supp. 2d 559, 574 (W.D. Va. 2000). The recommendations and decision to assign Plaintiff to AdSeg pending transfer are not actionable because they were neither retaliatory nor adverse. Rather, they were legitimate acts of prison management and *resulted in granting Plaintiff's own request to be transferred*. That Plaintiff complains he got the transfer he asked for is duplicitous.

Specifically, as was already in the record before Plaintiff received the PSDs, it was Roslak's and Kestler's respective observations of Plaintiff's behavioral issues, and to some extent, *Plaintiff's previously telling Kestler he wanted to be transferred*, that led to the initial *recommendation* that he be transferred. ECF 21-1 pp. 21-1 pp. 4-5; ECF 21-5 ¶¶ 5, 8; ECF 21-6 ¶ 14. When Kestler explained the AdSeg pending transfer option to Plaintiff as a means to get him transferred sooner than he could be if he initiated a transfer request on his own, Plaintiff was in accord. ECF 21-6 ¶ 14. Given that the assignment served legitimate penological goals, that Plaintiff asked for a transfer in advance, that Plaintiff confirmed to Kestler that he was in accord with being assigned to AdSeg pending transfer, and that Plaintiff not once complained about his housing on the AdSeg pending transfer status on HU5, there is no ground whatsoever for any claim of retaliation arising from Roslak's (or Kestler's) participation in making recommendations. The AdSeg pending transfer status was Plaintiff's best option. ECF 21-6 ¶¶ 8-9, 14-16; ECF 21-5 ¶¶ 11-14, 16; ECF 21-7 ¶ 5.

- *Plaintiff cannot revisit the issue about decision-making procedures, as they are out of the scope this Court's Order permits, and the matter has already been addressed multiple times.*

Plaintiff directs his supplemental opposition at the procedure by which the decisions were made. See e.g., ECF 42 p. 4, *et seq*. He tries to undermine the clear evidence from the record that proper procedure was followed both in the decision to keep him on HU4 between the IHO decision and his next assignment and in the decision to assign him to AdSeg pending transfer. *Id*. This is unavailing to him. First, as Defendants presented in their MTDSJ, the matter of the post-IHO decision HU4 stay is not at issue in this case because Plaintiff did not exhaust his available administrative remedies on the issue, ECF 21-1 p. 19 n. 4, and did not raise it in his initial complaint and cannot do so now, see n. 4, *supra* (herein); ECF 21 p. 19 n. 4; ECF 34 pp. 12-13. Second, Plaintiff failed to complain about the procedure by which he was assigned to HU5 AdSeg pending adjustment in his complaint in this case and is barred from doing so with his opposition briefs. See n. 4, *supra* (herein); ECF 21-1 pp. 19-20; ECF 34 p. 10. Third, any claim that procedures were not followed in making the at-issue decisions is futile, as they were done according to proper procedure.[5] ECF 21-1 p. 20 n. 5; ECF 21-7 ¶¶ 9, 10, 14. Fourth, even if procedure had not been followed to make the decisions, this would not amount to a violation of Plaintiff's constitutional rights, nor would it obviate the Defendants' qualified immunity protections: A violation of internal regulations or policies does not alone support a constitutional violation. "[T]he Supreme Court has indicated that the violation of established procedure alone is insufficient to overcome a qualified immunity claim." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also*, *City & Cty. of San Francisco v. Sheehan*, 576 U.S. 600 (2015) ("Even if an officer acts contrary to her training, however ... that does not itself negate qualified immunity where it would otherwise be warranted.").

---

[5] Plaintiff also again claims he should have been moved to a general population bed within 48 hours of the IHO decision, ECF 42 p. 5; however, as was already addressed in the record with the first MTDSJ, there were no beds for his security level, ECF 21-1 pp. 3-4, the issue does not implicate a constitutional matter, and this issue is outside the scope permitted to Plaintiff by the Court's Order, ECF 39.

- *Plaintiff's proffered authorities do not support his claim*

Plaintiff's reliance on *Sims v. Artuz*, 230 F.3d 14 (2nd Cir. 2018) and *Sealy v. Giltner*, 197 F.3d 578 (2nd Cir. 1999), ECF 42 pp. 12-13, is unavailing. These Second Circuit opinions do not override the precedent that Defendants cite (whether by the Supreme Court and the Fourth Circuit Court of Appeals, including *Prieto v. Clarke*, 780 F.3d 245, 252 (4th Cir. 2015)). On the holdings of Defendants' cited legal authorities, ECF 21, 34, 36, this Court must dispose of this case in Defendants' favor.

### III.  CONCLUSION

The Court should dismiss Plaintiff's complaint, or, in the alternative, grant summary judgment in Defendants' favor.

Respectfully submitted,
ANTHONY G. BROWN
Attorney General of Maryland


_____/s/_____
TERESA M. KELLY
Assistant Attorney General
Federal Bar No. 09034
St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-7962 (Telephone)
(410) 576-6880 (Telefax)
E-mail: tkelly@oag.state.md.us

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or within one (1) business day of this 15th day of March 2024, a copy of the foregoing Reply in Support of Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF 21, 34) and in Response to Plaintiff's Supplemental Opposition thereto (ECF 42) was or will be mailed, postage prepaid, to:

Samuel Smalls #501-033
Western Correctional Institution
13800 McMullen Highway, S.W.
Cumberland, Maryland 21502.

/s/
TERESA M. KELLY